IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.  05-cv-01562-LTB-MJW

DOUG PACE,

    Plaintiff,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, a/k/a USA,

    Defendant.

---

**ORDER REGARDING:
ORDER TO SHOW CAUSE (DOCKET NO. 134)
AND
DEFENDANT UNITED SERVICES AUTOMOBILE ASSOCIATION'S MOTION FOR ATTORNEY FEES (DOCKET NO. 135)**

---

**Entered by U.S. Magistrate Judge Michael J. Watanabe**

    This matter was before the court on June 20, 2007, for hearing on the Show Cause Order (docket no. 134) and on the Defendant United Services Automobile Association's Motion for Attorney Fees (docket no. 135).  The court has considered the Order to Show Cause (docket no. 134), the Defendant United Services Automobile Association's Motion for Attorney's Fees (docket no. 135), and the response (docket no. 137) thereto.  In addition, the court has considered the testimony and credibility of Kevin Rea.  Lastly, the court has taken judicial notice of the court's file and has considered applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings of fact, conclusions of law, and order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2. That venue is proper in the state and District of Colorado;

3. That each party has been given a fair and adequate opportunity to be heard;

4. That on May 21, 2007, I issued and sent a Minute Order setting a further settlement conference on May 30, 2007, at 3:30 p.m. to all parties and counsel via e-mail (docket no. 131);

5. That on May 30, 2007, the plaintiff and plaintiff's counsel, Rodney P. Bridgers, Jr., Robert E. Markel, and Jaime L. Baxter, failed to appear for the continued settlement conference. Defendant's representative and Defendant's counsel did appear for the settlement conference. (docket no. 133);

6. That on May 31, 2007, I issued an Order to Show Cause to plaintiff and to his three counsel, Mr. Bridgers, Mr. Markel, and Ms. Baxter, and set such Show Cause for hearing on June 13, 2007, at 8:30 a.m. (docket no. 134);

7. That on June 8, 2007, defendant file a motion for attorney fees and costs (docket no. 135);

8. That on June 12, 2007, plaintiff filed his response to defendant's

3

motion for attorney fees and costs (docket no. 137);

9. That on June 13, 2007, I continued the Show Cause Hearing until June 20, 2007, at 8:30 a.m. so that Kevin Rea, the plaintiff's counsel's IT administrator, could be present to give testimony;

10. That on June 20, 2007, I conducted a Show Cause Hearing (docket no. 134) and also a hearing on defendant's motion for attorney fees and costs (docket no. 135);

11. That at the June 20, 2007 hearing, I called Kevin Rea as a witness pursuant to Federal Rule of Evidence 614;

12. That Mr. Rea's testimony revealed the following:

   a. That he is the IT Administrator for Franklin D. Azar & Associates, P.C.;

   b. That on May 21, 2007, Franklin D. Azar & Associates, P.C., had Barracuda Spam Firewall software installed on their computer system which was networked;

   c. That there were complaints by female employees of the law firm of Franklin D. Azar & Associates, P.C., of receipt of SPAM emails with sexually explicit content and offensive language, and the Office Administrator requested that Mr. Rea lower the SPAM threshold to block such offensive SPAM from reaching the employees;

4

d. That on May 21, 2007, at approximately 10:30 a.m, Mr. Rea implemented this change by lowering the SPAM threshold to "1.0" to eliminate such sexually explicit and offensive emails;

e. That in Mr. Rea's experience, it was highly unusual for a legitimate email to be assigned a SPAM score as high as 1.0;

f. That Mr. Rea did not inform Mr. Bridgers, Mr. Markel, or Ms. Baxter about the lowering of the SPAM threshold;

g. That prior to this occurrence, Franklin D. Azar & Associates, P.C., did not have a formal policy on the criteria to establish or change the SPAM firewall;

h. That Mr. Rea was familiar with the Barracuda Spam Firewall User's Guide that was shown to him by the court;

i. That when asked by the court why the United States District Court for the District of Colorado's domain name "cod.uscourts.gov" was not whitelisted, Mr. Rea testified that he did not think it was necessary since the SPAM threshold was set at 1.0, and it should not have blocked emails from this court. However, the

      court directed Mr. Rea to the definition of "Whitelist" in Barracuda Spam Firewall User's Guide. It states: **"The list of email addresses or domains from which you <u>always wish to receive messages</u>. The only time the Barracuda Spam Firewall blocks a message from someone on your whitelist is when the message contains a virus or a disallowed attachment file extension."**

j. That it would have been a very simple task to whitelist the United States District Court for the District of Colorado's domain name of "cod.uscourts.gov" to insure that such e-mails with this domain name would always be received;

k. That as of the date of this hearing on June 20, 2007, Mr. Rea still had not whitelisted this court's domain name even though he previously whitelisted the court domain names of the Colorado State Courts prior to May 21, 2007, was now aware as of approximately June 13, 2007, that some of the e-mails from this court were not received by Mr. Bridgers, Mr. Markel, and Ms. Baxter, and was aware that whitelisting this court's domain name would be the best way to insure

6

that emails from this court would be received by Mr. Bridgers, Mr. Markel, and Ms. Baxter. <u>See</u> Barracuda Spam Firewall log sheets attached to Mr. Rea's affidavit which shows e-mails from Colorado State Courts were not blocked because they were whitelisted (docket no. 137-2); and,

l. That after Mr. Rea lowered the SPAM threshold to 1.0, he never bothered to check to see if any of the emails from this court were being filtered into the Baracuda Spam file until it was brought to his attention on or about June 13, 2007, by counsel for the plaintiff.

13. That plaintiff's counsel, Mr. Bridgers, Mr. Markel, and Ms. Baxter, are the responsible persons to adopt internal office procedures that ensure the court's notices and orders are brought to their attention once they have been received.

Rule 16(a)(5) of the Federal Rules of Civil Procedure provides the court with authority to order the parties to appear for a conference to discuss settlement of the case. Sanctions for failing to appear for an court-ordered pretrial conference are available under Rule 16(f), which states:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to

7

> participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed R. Civ. P. 16(f).

Subsection (f) of Rule 16 was added as part of the 1983 amendments to Rule 16. The Tenth Circuit has stated in Matter of Baker, 744 F.2d 1438 (10th Cir. 1984), that "[i]t is clear from the language and the context in which this amendment to the Rule was enacted that neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions. The intent is to impose the sanction where the fault lies. It is not necessary that the party or the party's lawyer be in violation of a court order as required for the application of Rule 37(b)(1), Federal Rule of Civil Procedure." Id. at 1440-41. Moreover, the Tenth Circuit stated:

> We are not dealing here with the historic concept of contempt. We are not dealing with the traditional award of attorney's fees as an adjunct of success in litigation. Nor are we dealing with the defiant refusal of an attorney or party to comply with some order of the court, such as discovery. Instead, we are dealing with the matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both. The primary purpose of sanctions in this context is to insure reasonable management requirements for case preparation. The secondary purpose is to compensate opposing parties for inconvenience and expense incurred because of any noncompliance with the reasonable management orders of the court. Of course the trial court has discretion to withhold the award of expenses, including reasonable attorney's fees, on an affirmative finding that the noncompliance was substantially justified or

8

that other circumstances would make the award unjust. Id. at 1441.

Here, the court finds that the evidence presented and the response (docket no. 137) filed by plaintiff do not show that failure of plaintiff's counsel to appear for the scheduled settlement conference on May 30, 2007, was substantially justified or demonstrate that other circumstances would make an award unjust. The court acknowledges that Mr. Bridgers,' Mr. Markel's, and Ms. Baxter's absence was not wilful or contumacious. It was, instead, simply negligent because of the manner in which their computer was set up to deal with notices the court issued through its ECF system. While that may explain the absence of plaintiff's counsel and help to make it somewhat understandable, that is not enough. It must have been substantially justified.

It is incumbent upon attorneys to adopt internal office procedures that ensure the court's notices and orders are brought to their attention once they have been received. In re Schlosser, 100 B.R. 348, 350 (Bankr. S.D. Ohio 1989); Greene v. Union Mut. Life Ins. Co., 102 F.R.D. 598, 603 (D. Maine 1984). This is just as true in these days of electronic noticing as it was when documents were sent by first class mail. To rely on procedures that treat the court's electronic notices as the functional equivalent of junk mail is not acceptable. Furthermore, it is counsels' responsibility to monitor the progress of their cases and the court's docket. See Fox v. American Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004) ("Regardless whether he received the e-mail notice, he remained obligated to monitor the court's docket."); In re DeLaughter, 295 B.R. 317, 320 (Bankr N.D. Ind. 2003).

Under these circumstances, the court cannot find that the failure to appear for the settlement conference on May 30, 2007, by plaintiff's counsel was substantially justified. However, this court finds that plaintiff Doug Pace was not negligent by not appearing for the settlement conference on May 30, 2007, since he was not provided notice of such settlement conference by his attorneys.

Therefore, pursuant to Fed. R. Civ. P. 16(f), plaintiff's counsel, Rodney P. Bridgers, Jr., Robert E. Markel, and Jaime L. Baxter, jointly and severally, should be ordered to pay to defendant's reasonable and necessary attorney fees and expenses it incurred as a result of attending the scheduled settlement conference on May 30, 2007, and for attending and participating in the hearings before this court on June 13 and 20, 2007.

**ORDER**

**WHEREFORE**, based upon these findings of fact and conclusions of law, this court **ORDERS**:

1. That plaintiff's counsel, Rodney P. Bridgers, Jr., Robert E. Markel, and Jaime L. Baxter, have failed to demonstrate that they were substantially justified in not appearing for the settlement conference on May 30, 2007, at 3:30 p.m., and thus the Order to Show Cause (docket no. 134) is SUSTAINED;

2. That defendant United Services Automobile Association's Motion for Attorney Fees (docket no. 135) is GRANTED, but this court will decide in the future the amount of the attorney fees and expenses;

3. That plaintiff's counsel, Rodney P. Bridgers, Jr., Robert E. Markel and Jaime L. Baxter, jointly and severally, shall pay to defendant the reasonable and necessary attorney fees and expenses it incurred as a result of attending the scheduled settlement conference on May 30, 2007, and for attending and participating in the hearings before this court on June 13 and 20, 2007, pursuant to Fed. R. Civ. P. 16(f);

4. That counsel shall meet forthwith to see if the amount of attorney fees and expenses can be stipulated. If counsel are able to stipulate to the amount of attorney fees and expenses, then they shall file such stipulation with the court. If they are unable to stipulate to the amount of attorney fees and expenses, then the defendant shall have up to and including July 19, 2007, to file its updated itemized affidavit for attorney fees and expenses. The plaintiff shall then have up to and including July 24, 2007, to file his response to defendant's updated itemized affidavit for attorney fees and expenses. If a response is filed, then defendant shall have up to and including July 30, 2007, to file any reply to plaintiff's response.

Done this 9th day of July 2007.

BY THE COURT
s/ Michael J. Watanabe
Michael J. Watanabe
U.S. Magistrate Judge